UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| HERIBERTO TORIBIO-RUIZ,<br><br>          Plaintiff,<br><br>v.<br><br>ROMEO ARANAS, *et al.,*<br><br>          Defendants. | 3:18-cv-00493-RCJ-CLB<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff Heriberto Toribio-Ruiz ("Toribio-Ruiz") against Defendants Romeo Aranas ("Aranas"), Karen Gedney, ("Gedney"), Marsha Johns ("Johns"), and Dana Marks ("Marks"), (collectively referred to as "Defendants"). Defendants have filed a motion for summary judgment. (ECF Nos. 38, 40, 43.)[2] Toribio-Ruiz responded, (ECF No. 49), and Defendants replied. (ECF No. 50). Having thoroughly reviewed the record and papers, the court recommends Defendants' motion for summary judgment, (ECF No. 38), be granted.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Toribio-Ruiz is an inmate currently in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Lovelock Correctional Center ("LCC"). (ECF No. 4 at 1.) On October 11, 2018, proceeding *pro se*, Toribio-Ruiz filed an inmate civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint"), seeking injunctive relief and monetary damages for events that occurred at the Northern Nevada Correctional Center ("NNCC"). (ECF No. 4.) In accordance with 28 U.S.C. § 1915A(a), the District

---

[1]   This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]   ECF No. 40 consists of sealed documents filed in support of the motion for summary judgment; ECF No. 43 is an erratum authenticating the sealed documents contained in ECF No. 40.

Court screened Toribio-Ruiz's Complaint on August 13, 2019. (ECF No. 3.) The Court allowed Toribio-Ruiz to proceed on an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants. (*Id*.)

Toribio-Ruiz's Complaint alleges that on September 15, 2015, Toribio-Ruiz was diagnosed with gout in his feet and his toes. (ECF No. 4 at 3-4.) Toribio-Ruiz alleges he was in extreme pain but was refused treatment despite sending multiple kites to Gedney. (*Id*.) On November 23, 2015, Toribio-Ruiz sent a kite Johns, detailing the pain he was experiencing due to his untreated gout, and requesting treatment, but was denied. (*Id*.) Subsequently, Toribio-Ruiz sent three more medical kites to Johns, all of which were similarly denied. (*Id*. at 5.) Toribio-Ruiz submitted multiple medical kites to Marks and Aranas for gout treatment, all of which were denied. (*Id*. at 5-6.) Toribio-Ruiz also filed an initial, first level, and second level grievance for the alleged nontreatment of his gout, all of which were denied. (*Id*.) Toribio-Ruiz then initiated this lawsuit.

On November 23, 2020, Defendants filed their motion for summary judgment. (ECF No. 38.) Defendants assert they are entitled to summary judgment because: (1) Defendants were not deliberately indifferent to Toribio-Ruiz's medical needs; (2) the medical evidence clearly establishes Defendants treated Toribio-Ruiz's medical needs; (3) the medical staff diagnosed and treated Toribio-Ruiz's foot pain as diabetic neuropathy and not Toribio-Ruiz's self-diagnosis of gout; (4) and alternatively, Defendants are entitled to qualified immunity. (*Id.*)

Toribio-Ruiz filed a response to Defendants' motion for summary judgment, asserting that Defendants were deliberately indifferent by failing to provide him with orthopedic shoes to relieve the symptoms of his neuropathic pain caused by gout. (ECF No. 49 at 2.) Toribio-Ruiz supports his diagnosis of gout by showing he was prescribed Allopurinol, which he claims treats gout. (ECF Nos. 49 at 26.) Toribio-Ruiz further asserts that Johns prescribed him a pair of Tuli's heel cups for shock absorption, and an AFO foot splint on February 11, 2016 which confirm the heel pain, and evidence the need for a prescription of orthopedic footwear. (*Id*. at 9-10; 27.)

## II. LEGAL STANDARD

Summary judgment should be granted when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994).

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party

to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . [I]n fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**III.   DISCUSSION**

    **A.   Civil Rights Claims Under 42 U.S.C. § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of

state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

**B.     Eight Amendment Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in the Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. Specifically, the plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002)

5

(internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

**1. Analysis**

Defendants assert in their motion that, based upon authenticated evidence, Toribio-Ruiz's was being monitored by physicians and he was receiving testing which showed that he did not have gout. Thus, according to Defendants, they were not deliberately indifferent to Toribio-Ruiz's medical needs. (*See* ECF Nos. 38 at 7; 40-2.) Specifically, Defendants claim that for Toribio-Ruiz to have a diagnosis of gout, his uric acid level in his blood serum must be greater than 6.0. (ECF No. 38 at 2.) However, Toribio-Ruiz's laboratory testing

1  during the relevant time in 2015 showed a low uric acid blood serum concentration.  (*See*
2  ECF No. 40-2 at 5, 12, 15.)  Defendants do not contest that Toribio-Ruiz's believes he has
3  a diagnosis of gout, but that lab testing does not show Toribio-Ruiz's uric acid state meets
4  the "therapeutic target for gout patients: <6.0".  (ECF No. 38 at 2.)

5  Defendants contend that Toribio-Ruiz's neuropathic foot pain was not caused by
6  gout, but by his diagnosis of diabetes.  (*Id*. at 7-8.)  The Defendants' exhibits show Toribio-
7  Ruiz's condition was being monitored and demonstrate Toribio-Ruiz's uric acid levels
8  being consistently low but show elevated A1C levels consistent with a diagnosis of
9  diabetes.  (*See* ECF Nos. 38 at 7; 40-2.)  Although Defendants medical progress notes
10 were largely illegible and they cited to exhibits which are missing,[3]  (*See* ECF No. 38), the
11 authenticated evidence which can be discerned by the court demonstrates Toribio-Ruiz
12 was being prescribed insulin to treat his diabetes.  (*See* ECF No. 40-5 at 2.)

13 The burden then shifts to Toribio-Ruiz to produce evidence which demonstrates
14 that Defendants were deliberately indifferent to his medical needs.  *Nissan*, 210 F.3d at
15 1102.  To satisfy the objective element, Toribio-Ruiz must show Defendants failed to treat
16 a serious medical condition.  *See Jett*, 439 F.3d at 1096.  Regardless of the diagnosis and
17 accepting the contentions of Toribio-Ruiz as true, the authenticated evidence presented
18 in this case establishes he was being prescribed Allopurinol to reduce uric acid levels and
19 treated for his foot pain with heel cups and an AFO foot splint, as Toribio-Ruiz himself
20 highlights in his response.  (ECF No. 49 at 9, 26-27, 93-94.)  There are no disputed of
21 material facts between the parties that Toribio-Ruiz was being prescribed Allopurinol and
22 received orthotics.  (*See* ECF No. 50 at 3.)  Therefore, Toribio-Ruiz cannot satisfy the
23 objective element that Defendants failed to provide treatment for either his gout.  *Jett*, 439
24 F.3d at 1096.

25 Toribio-Ruiz's claim fails as his own exhibits show that he was being treated for

---

[3]  Defendants cite to Exhibit F and Exhibit G in their motion for summary judgment, but no such exhibits were included in their submission.  Therefore, Defendants' arguments relying on missing exhibits were not considered.

gout, therefore the Defendants were not deliberately indifferent to his medical needs. (ECF No. 49 at 9, 26-27, 93-94.) In his response, Toribio-Ruiz does not assert that he did not receive treatment, but rather that he disagrees with the treatment he was given. (*See* ECF No. 49 at 9, 27-28.) Toribio-Ruiz's requested Lyrica to treat his neve pain in his foot pain but was denied. (*Id*. at 5, 28.) On October 28, 2015 Toribio-Ruiz also requested orthopedic shoes but was delayed in receiving them, although he was ultimately prescribed the shoes on March 22, 2019. (*Id*. at 4-5, 28, 32.) However, prior to that, Toribio-Ruiz was prescribed heel cups for shock absorption, and an AFO foot splint on February 11, 2016. (*Id*. at 9-10; 27.) A difference of opinion in what treatment is proper between Toribio-Ruiz and Defendants fails as a matter of law to establish deliberate indifference to serious medical needs. *See Toguchi*, 391 F.3d at 1058. Accordingly, Toribio-Ruiz fails to prevail on his argument between alternative courses of treatment, because both Allopurinol, and the heel cups and ASO splint were prescribed treatments for his gout and his neuropathic nerve pain in his feet which he proffers to rebut Defendants' claim that he does not have gout. (*See* ECF No. 49 at 4.) Therefore, Toribio-Ruiz cannot satisfy the subjective element of his deliberate indifference claim because the evidence demonstrates Defendants did not deny, delay, or intentionally interfere with his treatment. *See Hallett*, 296 F.3d at 744. Accordingly, the court recommends Defendants' motion for summary judgment be granted.[4]

## IV.    CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends Defendants' motion for summary judgment (ECF No. 38) be granted.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled

---

[4] The court does not address Defendants' qualified immunity argument because the court finds that Toribio-Ruiz's constitutional claim fail on the merits.

"Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 38) be **GRANTED**; and,

**IT IS FURTHER RECOMMENDED** that the Clerk of the Court **ENTER JUDGMENT** and **CLOSE** this case.

**DATED**: April 1, 2021

_____
**UNITED STATES MAGISTRATE JUDGE**